■ BRIAN O'SULLIVAN, Respondent, v CITY OF NEW YORK et al., Appellants. [834 NYS2d 30]—

Order, Supreme Court, New York County (Carol E. Huff, J.), entered January 12, 2006, which denied defendants' motion for summary judgment dismissing the amended complaint, unanimously reversed, on the law, without costs, defendants' motion granted and the complaint dismissed. The Clerk is directed to enter judgment accordingly.

On July 6, 1999, plaintiff, a candidate for appointment as a New York City police officer who was born with a congenital deformity of his lower right leg necessitating surgery and the use of a prosthetic limb his entire life, received a notice that the Police Department had found him not qualified for appointment, the reason given being "Ortho." Plaintiff appealed to the Civil Service Commission and submitted a July 9, 1999 letter from Dr. Bruce B. Grynbaum, vice-chairman of the NYU Medical Center's Department of Rehabilitation Medicine, who, after examining plaintiff, stated that "plaintiff showed no difficulty doing a deep knee bend. He was running on a treadmill with 8 miles an hour speed without any difficulty." Dr. Grynbaum was of the opinion that plaintiff "should be able to perform normal duties of a police officer."

More than a year later, on August 14, 2000, Robert E. Thomas, M.D., the Police Department's chief surgeon, responded to plaintiff's administrative appeal and, inter alia, detailed the results of a December 16, 1998 examination and a review of plaintiff's medical records by Dr. Arnold Goldman, a board-certified departmental orthopedist, who determined that plaintiff was medically disqualified in part by his history of hip and back problems. The chief surgeon pointed out that Dr. Gold-

man had reviewed the case again on April 2, 1999 and concluded that "due to the significant medical history, the abnormal hip, potential problems with an above the knee prosthesis, and progressing back problems, [plaintiff] would have difficulty performing a number of essential functions of a police officer, including, but not limited to, running, jumping and defending himself or others in an altercation." Defendants' response was received by plaintiff on August 15, 2000 at which time he was also provided for the first time with a copy of a July 6, 1999 report by Dr. Thomas who, at plaintiff's request, had reexamined him on May 11, 1999 and found that plaintiff "had obvious difficulty turning in place, stooping and while in a stooped position, had difficulty maintaining his balance." The chief surgeon also found that plaintiff could not be expected to perform on a consistent basis six itemized tasks, among them, running and changing directions quickly using the knees and feet as a rotational axis.

Nine days later, on August 24, 2000, plaintiff was again examined by Dr. Grynbaum who performed various tests on plaintiff and found, among other things: that plaintiff had good balance; that he had no difficulty standing with his heels and toes together with his eyes closed; that he was able to walk a straight line with one foot in front of the other; and that his standing was not disturbed by pushes in different directions on the trunk. Dr. Grynbaum stated that he could "appreciate Dr. Thomas' concern[,] however from my experience with amputees I still maintain the opinion that [plaintiff] has the physical ability to work as a police officer."

Thereafter, on September 8, 2000, the Civil Service Commission affirmed the Police Department's determination, finding in pertinent part that the tests administered by Dr. Thomas and other Police Department medical personnel were closer to the scenarios plaintiff would face as a police officer than the tests performed by Dr. Grynbaum and holding, again in pertinent part, that while it was mindful of the impressive array of physical obstacles that plaintiff has overcome and commended his outstanding stamina, persistence and apparent love for police work, it "[could] not disregard the findings of medical experts knowledgeable of police officer physical demands and the danger that could result from a potential physical frailty on the part of [plaintiff] while in the line of duty."

Thereafter, in 2002, plaintiff again took and passed the written examination for appointment as a police officer, but was found medically disqualified on June 26, 2002. The reasons given were: "R-leg Prosthesis/Degenerative Arthritis R-hip,

Lower back." Plaintiff apparently did not appeal his disqualification administratively instead bringing this action alleging unlawful discrimination in violation of various sections of the Human Rights Law (Executive Law art 15).

It is undisputed that a conclusive finding that plaintiff is incapable of performing the essential duties of a police officer would mean that there was no violation of Executive Law § 296 (1) (a) inasmuch as he would not be disabled within the meaning of Executive Law § 292 (21) (*see Bellamy v City of New York*, 14 AD3d 462, 463 [2005]). Defendants moved for summary judgment dismissing the complaint on the ground that plaintiff was barred by the doctrine of collateral estoppel from relitigating the issue of whether he is medically qualified to perform the essential functions of a police officer, which issue has already been decided against him by the Civil Service Commission. In denying defendants' motion, the court found that, because plaintiff had only three weeks to respond to defendants' opposition to his administrative appeal, it cannot be said that plaintiff was afforded a "full and fair opportunity" to contest the Police Department's determination that he was medically disqualified from appointment as a police officer.

Contrary to the court's holding, we conclude, based upon the foregoing facts, that the record establishes that plaintiff was provided "a full and fair opportunity to litigate" before the Commission the issue of his medical qualification to perform the essential duties of a police officer. Although plaintiff's administrative appeal to the Commission was pending for more than a year before he was provided with Dr. Thomas's response, including his July 6, 1999 report and the additional bases for the finding that he was medically disqualified, plaintiff clearly had a sufficient opportunity to address these findings. Indeed, plaintiff was again examined by Dr. Grynbaum who submitted further medical evidence in support of plaintiff's administrative appeal, which the Civil Service Commission considered but found insufficient to counter the medical opinions of the Police Department's own physicians who were knowledgeable respecting the physical demands on police officers in the line of duty. Concur—Andrias, J.P., Marlow, Williams, Buckley and Malone, JJ.